1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Pharmaplast S.A.E.,

      Plaintiff

v.

Zeus Medical Holdings, LLC, et al.,

      Defendants

2:15-cv-002432-JAD-PAL

**Order Granting in Part Motion
for Summary Judgment**

[ECF No. 38]

      Pharmaplast S.A.E. sues Zeus Medical Holdings, LLC and its managing members for Zeus's failure to pay for products it purchased from Pharmaplast and the misrepresentations and personal payment guaranties by Zeus's members that Pharmaplast relied on in shipping the products.  Two of Zeus's members move for summary judgment, arguing that they are shielded by Nevada's limited-liability-company laws and that there is no evidence to hold them personally liable for Zeus's debts under an alter-ego theory.[1]  I agree and grant summary judgment on all claims asserted against these member-defendants based on an alter-ego theory, but I find that genuine issues of fact preclude summary judgment on the claims asserted against them directly.

**Background**

      Robert Daniels, Mark Bolling, and Daniel Mulvany established Zeus Medical Holdings, LLC in Nevada in 2012 as a distributor of first-aid products.[2]  In August 2012, Zeus entered into a Letter of Understanding ("LOU") with Egyptian company Pharmaplast S.A.E. for Pharmaplast to "manufacture products under Zeus['s] labeling and private labeled for Zeus customers" for

---

[1] ECF No. 38.  Although the motion was initially filed by all three of the member-defendants, Robert Daniels has filed a notice of bankruptcy, ECF No. 42, so this litigation is stayed against him.  I thus consider this motion only as to the remaining member-defendants Mark Bolling and Daniel Mulvany.

[2] *See*, *e.g.*, ECF No. 38-1 at 14–21 (Zeus Member Agreement).

1  Zeus to "distribute . . . in various market segments in North America."[3]  The LOU contemplated
2  that Pharmaplast would secure a third-party logistics facility in the U.S. and then manufacture the
3  products and ship them to that logistics facility, which would then release the products to Zeus.
4  Zeus would then pay for the products it received on a net-30 day basis.[4]

5          But that is the extent of the origin story that the parties agree on.  Pharmaplast claims that
6  it was bamboozled by Zeus's member-defendants, who fabricated their international importing
7  experience and qualifications.[5]  Pharmaplast alleges that it did not learn the truth about its new
8  business affiliates' incompetence and lack of credentials and connections until after signing the
9  LOU, and it promptly responded by verbally amending the agreement and then cutting Zeus's
10  credit line from $250,000 to $125,000.  It only shipped products based on the member-
11  defendants' repeated promises that they would personally pay any invoices that Zeus could not
12  cover.[6]  Pharmaplast claims that, in reliance on those personal guaranties, it shipped nearly
13  $120,000 in goods to a third-party facility, from which the member-defendants removed them,
14  secreting them in an undisclosed location.[7]  Pharmaplast sues Zeus and its members for the price
15  of those goods, the $7,000 it paid for Zeus's label artwork, and the approximately half million
16  dollars in opportunities that it claims it lost while wasting its time with Zeus.[8]

17          The member-defendants blame the relationship's failures exclusively on Pharmaplast.
18  They claim that they met Pharmaplast's principal Mamdouh Atteia at a trade show in Miami in
19  August 2012, entered into the LOU, and received Atteia's verbal assurances that Pharmaplast
20  would supply Zeus a product line with a $250,000 limit.  In reliance, Zeus abandoned its existing

21  _____

22  [3] ECF No. 43-3 at 2 (LOU).

23  [4] *Id.*

24  [5] ECF No. 43-1 at ¶¶ 23–26.

25  [6] *Id.* at ¶¶ 28, 29, 38.

26  [7] *Id.* at ¶ 20.

27  [8] ECF Nos. 1; 43-1 at ¶ 44.

28

supplier and moved its business to Pharmaplast.  But Zeus soon learned that Pharmaplast's ability to supply the promised products was hampered by an ongoing lawsuit with URICA, Inc., another importer who claimed that it had the exclusive right to distribute all Pharmaplast-branded products in the U.S.—a problem that Pharmaplast failed to disclose;[9] Pharmaplast was unable to afford the third-party warehouse facility, forcing Zeus to bear that cost; and manufacturing limitations left Pharmaplast unable to provide the products in the quality, quantities, and timeframes promised.  It was these problems, Zeus contends, that caused the company to fold.[10]

The member-defendants move for summary judgment.  The premise of their argument is that "In order for [Pharmaplast] to prevail in this case [it] would have to prove that Defendants Daniels, Boling and Mulvany are personally responsible for the debts of a validly formed and operated Nevada LLC."[11]  This is true for Pharmaplast's claims for breach of written contract (claim 1), breach of the implied covenant of good faith and fair dealing (claim 2), conversion (claim 3), and accounting (claim 4).  But it is not true for Pharmaplast's claims for intentional and negligent misrepresentations (claims 5 and 6), which allege that Bolling, Daniels, and Mulvany personally made knowingly false representations to Pharmaplast to get this supplier to ship goods to Zeus.[12]  Nor is it true for Pharmaplast's seventh through ninth claims—entitled "account stated," "goods sold and delivered," and "open book account"—which appear to include claims against the member-defendants individually for breach of their personal guaranties of payment.[13]  Having reviewed the parties' pleadings, briefing, exhibits, and extensive evidentiary objections, I find that this motion is suitable for disposition without oral

[9] ECF No. 38 at 9; ECF No. 44 at 10–12 (Mulvany decl.).

[10] *Id*. at 10–12.

[11] ECF No. 38 at 1.

[12] ECF No. 1 at 12–18.

[13] *Id*. at 18–19 (*see, e.g.,* ¶ 66 ("Defendants agreed that the account was stated in the correct amount owed to between plaintiff Pharmaplast S.A.E., and promised to pay Plaintiff therefor")).

1   argument,[14] and I grant it in part.

2                                    **Discussion**

3   **A.      Summary-judgment standards.**

4          Summary judgment is appropriate when the pleadings and admissible evidence show that

5   "there is no genuine issue as to any material fact and that the moving party is entitled to judgment

6   as a matter of law."[15]  When considering summary judgment, the court views all facts and draws

7   all inferences in the light most favorable to the nonmoving party.[16]  If reasonable minds could

8   differ on material facts, summary judgment is inappropriate because its purpose is to avoid

9   unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of

10  fact.[17]

11         If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue

12  of material fact, the burden shifts to the party resisting summary judgment to "set forth specific

13  facts showing that there is a genuine issue for trial."[18]  The nonmoving party "must do more than

14  simply show that there is some metaphysical doubt as to the material facts;" it "must produce

15  specific evidence, through affidavits or admissible discovery material, to show that" there is a

16  sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[19]

17

18

19

20

---

21  [14] Nev. L.R. 78-1.

22  [15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

23  [16] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

24  [17] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n
25  v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

26  [18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

27  [19] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v.
28  NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

                                        4

1

2

**B.      The member-defendants have demonstrated an absence of genuine issues of fact to support Pharmaplast's alter-ego theory against them.**

3      Pharmaplast's first through fourth claim—breach of written contract, breach of the

4    implied covenant of good faith and fair dealing, conversion, and accounting—are based on

5    written (and allegedly orally modified) agreements between Pharmaplast and Zeus.[20]  Before its

6    2014 dissolution, Zeus was a Nevada limited liability company, formed under Chapter 86 of the

7    Nevada Revised Statutes.  NRS 86.371 provides, "Unless otherwise provided in the articles of

8    organization or an agreement signed by the member or manager to be charged, no member or

9    manager of any limited-liability company formed under the laws of this State is individually

10   liable for the debts or liabilities of the company."[21]  Zeus's organizing documents contain no such

11   provision,[22] so to hold Mulvany and Bolling liable for Zeus's debts and liabilities, Pharmaplast

12   must pierce the LLC's version of the corporate veil.

13      The Nevada Supreme Court has not expressly held that the laws for piercing the corporate

14   veil under the alter-ego doctrine apply to LLCs, but it has applied those rules in the LLC context,

15   "assum[ing] without deciding that" the corporate analysis applies.[23]  The member-defendants

16   argue that the absence of an alter-ego provision in Nevada's chapter on LLCs suggests that "the

17   Nevada legislature did not intend for it to apply to LLCs."[24]  They go on to argue that, even if the

18   alter-ego doctrine could apply to LLCs, there is no evidence to support its application to hold the

19   member-defendants personally liable for Zeus's debts and liabilities in this case.[25]

20      Pharmaplast takes a completely different tack: it argues that LLCs are like partnerships,

21

22   [20] ECF No. 1 at ¶¶ 16–48 and exhibits A & D thereto.

23   [21] Nev. Rev. Stat. § 86.371.

24

25   [22] *See* ECF No. 38-1 at 12–21 (Member Agreement), and at 23–29 (Operating Agreement).

26   [23] *See Webb v. Shull*, 270 P.3d 1266, 1271 n.3 (Nev. 2012).

27   [24] ECF No. 38 at 18.

28   [25] *Id.* at 18–24.

and Nevada's statutes governing partnerships that make partners liable for the debts and obligations of the partnership apply to Zeus and its members. But the cases that Pharmaplast cites to liken LLCs to partnerships draw this analogy only for purposes of determining an LLC's citizenship in a diversity analysis.[26] And I am not persuaded that Nevada's partnership laws make the members of Zeus Medical Holdings, LLC personally liable for Zeus's debts and obligations when NRS 86.371—which expressly applies to limited liability companies like Zeus—says just the opposite. As Judge Markell put it in *In re Giampietro* when predicting that "Nevada courts would recognize the extension of the alter ego doctrine to members of limited liability companies, "Nevada law expressly limits the liability of a member of a limited liability company; that is the purpose of 'limited liability' in the name of the entity."[27]

The Nevada Supreme Court has at least twice assumed without deciding that the alter-ego concepts that apply in Nevada corporate law also apply to Nevada LLCs.[28] I do the same here. I thus assume, but do not decide, that the alter-ego principles that permit courts to pierce corporate veils also permit them to pierce LLC veils in Nevada.

Unfortunately for Pharmaplast, those principles are not triggered by this record. Because "the alter ego doctrine is an exception to the general rule recognizing corporate independence," "the corporate cloak is not lightly thrown aside."[29] An alter-ego showing in Nevada requires that (1) the entity is "influenced and governed by" the member; (2) there is "such unity of interest and ownership" that the LLC and the member are inseparable from each other; and (3) adherence to

---

[26] *See* ECF No. 43 at 23–24 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990); *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998)).

[27] *In re Giampietro*, 317 B.R. 841, 846 (Nev. Bankr. 2004).

[28] *See Webb*, 270 P.3d at 1271; *JSA, LLC v. Golden Gaming, Inc.*, 2013 WL 5437333, *5 (Nev. Sept. 25, 2013) (citing *Webb*, again assuming without deciding that the doctrine applies, and holding that "the district court correctly determined that the corporate veil should not be pierced in" that case).

[29] *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846 (Nev. 2000) (quoting *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916, 916 (Nev. 1969)).

the fiction of a separate entity "would, under the circumstances, sanction a fraud or promote a manifest injustice."[30]  Although "there is no litmus test for determining when the corporate fiction should be disregarded," factors including: "(1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities" may indicate the existence of an alter ego.[31]

Pharmaplast's thin alter-ego demonstration focuses on Zeus's accounting records and notes that 42.3% of Zeus's reported income "went out to" the member-defendants "over the relevant time period."[32]  Pharmaplast also points out references to undefined "Funds Transfers" and "Split" entries and concludes from these entries that Zeus was undercapitalized because the member-defendants were "pilfering the treasury into insolvency" and "using Zeus as their own personal bank (alter ego) during the period they were supposed to be marketing Pharmaplast goods."[33]  "To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."[34]  But the only evidence that Pharmaplast offers to support these aspersions is the declaration of Pharmaplast's lawyer, Lawrence M. Boesch, who essentially offers his own expert-style opinions about Zeus's accounting records without establishing that he is qualified to do so or that he was disclosed as an accounting expert in this case.[35]  Because it appears unlikely that Boesch's opinions would be admissible at trial, I

---

[30] *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008) (quoting *Ecklund v. Nevada Wholesale Lumber Co.*, 562 P.2d 479, 479–80 (Nev. 1977)).

[31] *Id*. at 847 (quoting *Polaris Industrial Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987)).

[32] ECF No. 43 at 26–27.

[33] *Id*.

[34] *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011).

[35] ECF No. 43-31 (Boesch declaration); ECF No. 44 (reply-brief objection to Boesch's declaration).

do not consider them here.  All that remains of Pharmaplast's alter-ego theory are merely its sweeping conclusory allegations.  Because there are no facts to preclude summary judgment on the claims against the member-defendants that are founded upon an alter-ego theory, I grant the member-defendants' motion for summary judgment on Pharmaplast's first through fourth claims for breach of written contract, breach of the implied covenant of good faith and fair dealing, conversion, and accounting.[36]

**C.    Disputed facts preclude summary judgment on Pharmaplast's remaining claims.**

I deny summary judgment on Pharmaplast's remaining claims because they appear to be stated against the member-defendants directly and not based solely on an alter-ego theory.  In claims five and six, Pharmaplast alleges that the member-defendants personally made intentional and negligent misrepresentations that caused Pharmaplast to enter into—or maintain—its relationship with Zeus.[37]  And I construe Pharmaplast's seventh through ninth claims (entitled "account stated," "goods sold and delivered," and open book account") to include two things: claims against Zeus for failing to pay for the goods it received[38] and claims against the member-defendants to cover Zeus's obligations based on their personal guaranties of payment.[39] Pharmaplast need not pierce Zeus's LLC veil to hold the member-defendants liable for these claims because fictitious entities do not shield individuals from liability for the torts that they actively participate in or the personal guaranties that they make.[40]  Mamdouh Atteia's declaration

---

[36] This order is intended to dispose of all claims against Bolling and Mulvany that are founded upon an alter-ego theory.  So, to the extent that plaintiff's remaining claims can be construed as alter-ego claims against the member-defendants, I grant summary judgment in favor of Bolling and Mulvany on those alter-ego theories, too.

[37] ECF No. 1 at 12–18.

[38] Default has been entered against Zeus.  *See* ECF No. 19.

[39] *Id*. at 18–19.

[40] *Coastal Abstract Serv., Inc. v. First Amer. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999); *accord*, *Pocahontas First Corp. v. Venture Planning Grp., Inc*., 572 F. Supp. 503, 508 (D. Nev. 1983) ("There is no doubt that an individual who commits a tort while acting in the capacity of a

details specific misrepresentations made by each of the member-defendants.[41]  And it describes each time that they personally guaranteed payment of Zeus's obligations.[42]  These sworn, specific facts create disputed, genuine issues of fact that preclude summary judgment on Pharmaplast's remaining claims pled against the member-defendants personally.[43]

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment **[ECF No. 38] is GRANTED in part and DENIED in part.  Summary judgment is granted in favor of defendants Mark Bolling and Daniel Mulvany on all of plaintiff's claims that are based on an alter ego theory** of liability (specifically including the entirety of claims one through four).  The motion is denied in all other respects.

Dated March 14, 2017

_____
Jennifer A. Dorsey
United States District Judge

---

corporate officer may be held personally liable."); *Jory v. Bennight*, 542 P.2d 1400, 1403 (Nev. 1975) (acknowledging that the corporate form "does not insulate" representatives from liability for their own torts); *Threlkel v. Shenanigan's, Inc.*, 881 P.2d 674 (Nev. 1994) (recognizing that representative of fictitious entity can make himself personally liable for guaranteeing payment of entity's debts).

[41] ECF No. 43-1 at ¶ 23 (all 3); ¶ 38(a) & (b) (Bolling only).

[42] ECF No. 43-1 at ¶¶ 4, 10, 15, 16, 29 (Bolling); ¶ 14 (all); ¶ 28 (Mulvany).

[43] The claims against Daniels remain subject to the automatic stay under § 362 of the bankruptcy code, so I do not adjudicate them in this order.  *See* ECF No. 42 (notice of bankruptcy).